UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

RON T. WILLIAMS,

    Plaintiff,

v.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT; DOES I through X; inclusive; ROE CORPORATIONS I through X, inclusive,

    Defendants.

2:06-CV-00528-PMP-GWF

O R D E R

Presently before the Court is Defendant Las Vegas Metropolitan Police Department's Motion to Dismiss (Doc. #6), filed on June 1, 2006. Plaintiff Ron T. Williams filed Plaintiff's Opposition to Motion to Dismiss (Doc. #7) on June 19, 2006. Las Vegas Metropolitan Police Department filed a Reply to Opposition to Motion to Dismiss (Doc. #8) on June 28, 2006.

**I. BACKGROUND**

Defendant Las Vegas Metropolitan Police Department ("LVMPD") currently employs Plaintiff Ron T. Williams ("Williams") as a lieutenant police officer, a position to which LVMPD promoted Williams in August of 2002. (Compl. ¶ 11.) Williams has worked for LVMPD since 1992. (Id.)

On October 22, 2002, Williams checked himself into a thirty-day alcohol rehabilitation program. (Id. ¶ 12.) Williams notified his captain, Greg McCurdy

1  ("McCurdy"), about his alcoholism and treatment needs sometime after October 23, 2002.
2  (Id. ¶ 13.)  Williams requested McCurdy to keep the information confidential and informed
3  McCurdy that he would use leave pursuant to the Family and Medical Leave Act.  (Id.
4  ¶ 14.)
5       The treatment facility discharged Williams and he returned to work on November 22,
6  2002.  (Id. ¶ 15.)  Williams alleges that after he returned to work, he experienced a more
7  "hostile and caustic attitude" from McCurdy.  (Id. ¶ 16.)  Additionally, Williams claims
8  McCurdy informed other members of LVMPD about his condition and treatment.  (Id.
9  ¶ 15.)
10      In January of 2004, LVMPD had an open position for a lieutenant in the special
11 events section of LVMPD.  (Id. ¶ 17.)  Williams applied for the position.  (Id.)  Williams
12 alleges that during the selection process, the person in charge of filling the position told
13 Williams that he "had reservations about selecting Williams for the position" because he
14 had heard that Williams had a drinking problem.  (Id.)  At some point, LVMPD transferred
15 Williams to the special events position.  (Id. ¶¶ 17, 23.)
16      On October 10, 2004, Williams went to a local bar and drank alcohol with a LVMPD
17 sergeant after work.  (Id. ¶ 18.)  On October 11, 2004, while off-duty, Williams again went
18 to a local bar with the same LVMPD sergeant and drank alcohol.  (Id. ¶ 19.)  Williams
19 claims he left after approximately one hour and drove his department vehicle home.  (Id.)
20 Williams denies that he was intoxicated.  (Id.)
21      The sergeant with whom Williams had been drinking also drove after drinking and
22 was involved in a one-car accident.  (Id. ¶ 20.)  LVMPD's Internal Affairs office
23 investigated the accident.  (Id. ¶ 21.)  Williams provided a recorded statement during the
24 investigation and claims that he fully cooperated during the investigation.  (Id.)
25 Subsequently, LVMPD charged Williams with "operating a department-owned vehicle after
26 consuming alcohol; driving while intoxicated; . . . . and not [being] forthright during his

investigation." (Id. ¶ 21.) Williams alleges the only basis for LVMPD's finding that he was intoxicated "was a blood-alcohol 'profile' that was allegedly performed by someone at the department, based upon an inaccurate and subjective analysis of Williams' [sic] weight, the number of drinks [LVMPD] thought he may have consumed at the bar, the time of his consumption, etc." (Id. ¶ 22.) Williams claims he never was charged criminally with the offense of driving while intoxicated. (Id.) On November 10, 2004, LVMPD transferred Williams from the special events section. (Id. ¶ 24.) Williams alleges LVMPD transferred him not for performance reasons but for punitive reasons. (Id. ¶ 23.)

On November 19, 2004, Williams checked himself into a treatment center for alcoholism. (Id. ¶ 26.) Williams reported to work again on December 2, 2004. (Id. ¶ 27.) Upon Williams's return to work, he informed his new captain, Randall Montandon ("Montandon"), about his alcoholism. (Id.)

On December 14, 2004, LVMPD announced open positions for police captain. (Id. ¶ 28.) Williams attended an orientation and information session in which LVMPD provided interested applicants with a questionnaire designed to be an outline for each applicant's qualifications. (Id. ¶ 29.) Williams alleges the questionnaire did not indicate that an applicant's prior adjudication of misconduct would disqualify him for the position of captain. (Id.) Williams alleges that LVMPD's prior policy was that an applicant's adjudications of misconduct did not disqualify an applicant for captain but that sometime prior to March 23, 2005, LVMPD changed its policy to disqualify applicants for captain who had received adjudications for misconduct. (Id. ¶ 25.)

Montandon informed Williams on February 23, 2005, that LVMPD would impose 120 hours of suspension for the charges related to Williams's conduct on October 11, 2004. (Id. ¶ 30.) Williams alleges that LVMPD pressured Captain Candy Byrd ("Byrd") to obtain Williams's signature on the final adjudication of the October 11, 2004 incident to disqualify Williams from taking the captain's test. (Id. ¶ 31.) Williams took the captain's test on

March 14, 2005, and claims he scored a seventy-six percent, which placed him among the top five candidates. (Id. ¶ 32.)

On March 16, 2005, Williams received the final adjudication of the October 11, 2004 incident. (Id. ¶ 33.) Williams alleges Byrd told him LVMPD pressured her into issuing the 120-hour suspension, despite her contrary recommendation. (Id.) Williams also asserts that LVMPD's disciplinary matrix lists driving a department vehicle after consuming alcohol as requiring only a written reprimand. (Id. ¶ 34.)

On March 23, 2005, Williams e-mailed his entire chain of command, asking whether he must list his adjudication in his application for captain. (Id. ¶ 36.) Williams's chain of command informed him he was required to list his adjudication. (Id.) On April 4, 2005, LVMPD told Williams his prior adjudication disqualified him from applying for captain. (Id. ¶ 37.) Williams asserts LVMPD disqualified him even though, at that point, he had not had an opportunity to appeal the adjudication. (Id.)

On April 12, 2005, Williams met with the deputy chief to discuss his adjudication. (Id. ¶ 38.) Williams alleges the deputy chief refused to listen to Williams's comments about his alcoholism and its effects. (Id.) On April 19, 2005, Williams met with the deputy chief again and Williams alleges that during the second meeting the deputy chief "admitted that the blood-alcohol 'profile' used to support the charge of driving while intoxicated was flawed and not reliable evidence, and that such charge would be removed from Williams' [sic] adjudication." (Id. ¶ 39.) Williams asserts LVMPD never has given him a rewritten adjudication that omits the intoxication charge. (Id. ¶ 40.)

Williams appealed the adjudication, and LVMPD's Labor/Management Board met to consider his appeal in May 2005. (Id. ¶ 41.) Williams alleges he attempted to present evidence concerning LVMPD's disparate treatment of him in imposing the 120-hour suspension when others received fewer hours of suspension for the same or more egregious conduct. (Id.) The Labor/Management Board upheld the adjudication along with the 120-

1  hour suspension.  (Id.)

2  Williams alleges that after the meeting, one of the Labor/Management Board members told Williams that "there was [sic] an apparent bias and prejudice that existed among most members of the Labor/Management Board, and which acted to suppress the evidence that was presented in Williams' [sic] favor in order to deny Williams his rights" and that the deputy chief said he based his decision to impose the suspension on Williams's alcoholism.  (Id. ¶¶ 42-43.)

8  On April 27, 2006, Williams brought suit in this Court alleging five causes of action.  (Compl.)  Williams asserts a claim under the American with Disabilities Act ("ADA"); a claim under the Equal Protection Clause of the United States Constitution; a claim for deprivation of property interest without due process, pursuant to the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983; a claim for intentional infliction of emotional distress; and a claim for negligent infliction of emotional distress.

14  LVMPD moves to dismiss arguing Williams has failed to state a claim under the ADA because the ADA does not apply to alcoholics who have relapsed and as a result Williams cannot make a prima facie case that he is a qualified individual with a disability.  Additionally, LVMPD argues Williams has failed to state an equal protection claim because he has failed to allege that he is a member of a protected class.  Regarding Williams's due process claim, LVMPD argues Williams received the due process to which he was entitled and therefore he has failed to state a claim.  LVMPD also asserts Williams did not allege that he has suffered emotional distress resulting in physical harm and so he cannot state a claim for intentional infliction of emotional distress.  Finally, LVMPD argues Williams cannot assert a claim for negligent infliction of emotional distress because "Williams was not a bystander to his alleged injury." (Mot. to Dismiss at 15.)

25  Williams counters that he has stated sufficiently a claim under the ADA, properly averred equal protection and due process claims, and set forth valid state law claims.

1  Williams additionally argues LVMPD's arguments do not address pleading issues but rather
2  involve issues of proof and therefore LVMPD improperly asserts them in a motion to
3  dismiss.

**II. LEGAL STANDARD**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in Plaintiff's Complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). There is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). The issue is not whether the plaintiff ultimately will prevail, but whether he may offer evidence in support of his claims. See id. at 249 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Consequently, the Court may not grant a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Hicks v. Small, 69 F.3d 967, 969 (9th Cir. 1995).

The liberal rules of notice pleading set forth in the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts supporting his claim. See Yamaguchi v. United States Dep't of the Air Force, 109 F.3d 1475, 1481 (9th Cir. 1997) (quoting Conley v. Gibson, 355 U.S. at 47). All the Rules require is a "short and plain statement" that adequately gives the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. (citations and internal quotations omitted). A claim is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief. See United

States v. Howell, 318 F.2d 162, 166 (9th Cir. 1963).

## III.  DISCUSSION

### A.  ADA Violation

LVMPD argues Williams cannot assert a claim under the ADA because the ADA does not protect relapsed alcoholics. Additionally, LVMPD argues it did not promote Williams because of his misconduct and not because of his status as an alcoholic.  Williams responds that his relapse does not bar him from asserting a claim under the ADA and argues that the authority to which LVMPD cites in support of its argument refers to illegal drug use, not alcohol use.

The ADA prohibits "discrimination against a qualified individual with a disability because of the disability . . . in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Although an individual currently engaged in the use of illegal drugs is not a qualified individual with a disability under the ADA, "alcoholism is a protected disability under the ADA." Brown v. Lucky Stores, Inc., 246 F.3d 1182, 1187-88 (9th Cir. 2001) (citations omitted).

Nonetheless, the ADA provides that an employer "'may hold an employee who . . . is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the . . . alcoholism of such employee.'" Id. (quoting 42 U.S.C. § 12114(c)(4)).  For example, in Brown, an employee whom an employer fired for conduct directly related to her illegal drug use and alcoholism was not a qualified individual with a disability because of her current illegal drug use. Id. at 1188 (citing 42 U.S.C. § 12114(a)).[1]

---

[1] Title 42 U.S.C. § 12114(a) provides "the term 'qualified individual with a disability' shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use."

7

Additionally, the Court found the employer did not violate the ADA because it based its termination of the employee on her unsatisfactory performance, not on her alcoholism. Id. at 1187 (citing 42 U.S.C. § 12114(c)(4); Collings v. Longview Fibre Co., 63 F.3d 828, 832 (9th Cir. 1995)).

In his Complaint, Williams states he suffers from the disability of alcoholism. (Compl. ¶ 46.) Williams also alleges LVMPD "discriminated against [him] due to his disability, and not due to his alleged misconduct." (Compl. ¶ 48.) Williams claims the disparate treatment included "a punitive transfer, a major suspension for misconduct requiring no more than a written reprimand in comparison to other, more egregious acts by members of the department, and his disqualification from the testing for the position of police Captain." (Compl. ¶ 47.) Williams has not alleged LVMPD held him to the same standards of job performance and behavior as other employees even though he is an alcoholic, but has alleged that because Williams is an alcoholic LVMPD held him to a different standard from the standard to which it held other employees. Accordingly, Williams sufficiently has pled a claim for discrimination under the ADA because Williams has provided fair notice of what his claim is, i.e., discrimination under the ADA, and the facts supporting such a claim, i.e., LVMPD treated Williams differently from other employees because he is an alcoholic. The Court therefore will deny LVMPD's motion to dismiss as to Williams's ADA claim.

**B. Equal Protection Violation**

LVMPD asserts the Court should dismiss Williams's equal protection claim "because he is not a member of a protective [sic] class." (Mot. to Dismiss at 11.) Specifically, LVMPD argues because Williams cannot establish he is protected under the ADA, he cannot show LVMPD selectively disciplined him due to his status as an alcoholic. Williams responds he set forth a claim under the Equal Protection clause.

The Equal Protection clause of the Fourteenth Amendment of the United States

Constitution provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." To state a claim for discrimination under the Equal Protection clause, "'a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)). Additionally, "[b]ecause 'the disabled do not constitute a suspect class' for equal protection purposes, a governmental policy that purposefully treats the disabled differently from the non-disabled need only be 'rationally related to legitimate legislative goals' to pass constitutional muster." Id. at 686-87 (quoting Does 1-5 v. Chandler, 83 F.3d 1150, 1155 (9th Cir. 1996)). Alternatively, a plaintiff who is not a member of a protected class may assert an equal protection claim as a "'class of one,' when the plaintiff alleges that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

      Williams sufficiently has stated a claim for violation of his Equal Protection rights. In his Complaint, Williams alleges LVMPD denied him equal protection of the laws by selectively enforcing existing rules against him, by selectively enforcing disciplinary standards against him, and by disproportionately disciplining Williams as compared to other employees. (Compl. ¶¶ 44, 53.) Williams further alleges that LVMPD intentionally subjected him to the adverse treatment. (Id. ¶¶ 43, 53.) Finally, Williams asserts LVMPD's action towards him "were so entirely without evidentiary foundation, reason or basis and were so arbitrary, capricious and unfounded, that [Williams] has been denied equal protection of the laws . . . . " (Id. ¶ 53.) Accordingly, although Williams has not alleged he is a member of a protected class he has alleged sufficiently an Equal Protection claim because he alleges LVMPD intentionally treated him different from others so situated and

no rational basis exists for the difference in treatment. The Court therefore will deny LVMPD's motion to dismiss Williams's equal protection claim.

**C. Due Process Violation**

LVMPD moves to dismiss Williams's due process claim arguing Williams cannot state a due process claim because he has had an opportunity to be heard.[2] Williams responds that he has stated sufficiently a due process claim.

To state a § 1983 claim based upon procedural due process, a plaintiff must establish: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). Due process requires that a party affected by government action be given notice and "'the opportunity to be heard at a meaningful time and in a meaningful manner.'" S.E.C. v. McCarthy, 322 F.3d 650, 659 (9th Cir. 2003) (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976)). A "public employee is entitled to notice and an opportunity to be heard before being deprived of a liberty or property interest." Orloff v. Cleland, 708 F.2d 372, 379 (9th Cir. 1983) (citing Vanelli v. Reynolds Sch. Dist. No. 7, 667 F.2d 773, 778 (9th Cir. 1982) (emphasis omitted)).

LVMPD does not contest Williams a property interest in his position and employment. (Mot. to Dismiss at 13.) Rather LVMPD argues the Court should dismiss Williams's due process claim because Williams has had an opportunity to be heard.

---

[2] In its Reply, LVMPD also argues for the first time that this Court does not have jurisdiction over Williams's due process claims. Specifically, LVMPD argues only a state court has jurisdiction over Williams's due process claim because Williams is asking for review of a state administrative adjudication. In support of its argument, LVMPD cites to the Nevada Administrative Procedure Act, Nevada Revised Statute 233B.010 et seq. However, Williams does not seek review of his adjudication pursuant to the Nevada Administrative Procedures Act, rather Williams alleges LVMPD violated his due process rights under the Fourteenth Amendment of the United States Constitution, thereby violating 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 1331, federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Accordingly, this Court has jurisdiction over Williams's § 1983 claim because it arises under the laws of the United States.

10

1  Williams alleges LVMPD denied him the opportunity to be heard at a meaningful time and
2  in a meaningful manner.  In his Complaint, Williams asserts LVMPD deprived him of his
3  property interest in his job by relying on unreliable information in imposing disciplinary
4  measures on Williams, by creating ad hoc rules, by preventing Williams from presenting a
5  meaningful defense in disciplinary proceedings, and by preventing Williams from objecting
6  to LVMPD's "vexatious and dilatory" investigative process.  (Compl. ¶ 58.)  Williams also
7  claims the review board that upheld the disciplinary action imposed on Williams was biased
8  and "pre-determined."  (Id.)  Williams claims that all of LVMPD's actions were "entirely
9  without evidentiary foundation, reason or basis and were . . . arbitrary, capricious and
10 unfounded."  (Id. ¶ 59.)  Accordingly, Williams has stated sufficiently a due process claim
11 and the Court therefore will deny LVMPD's motion to dismiss Williams's due process
12 claim.

### D. Intentional Infliction of Emotional Distress

14 LVMPD argues Williams fails to state a claim for intentional infliction of emotional
15 distress because Williams did not suffer from severe or extreme emotional distress.[3]
16 Williams counters that he properly has pled a claim for intentional infliction of emotional
17 distress and at this stage in the litigation, he is not required to offer proof of his claims.  In
18 Nevada, the elements of a cause of action for infliction of emotional distress are: "'(1)
19 extreme and outrageous conduct with either the intention of, or reckless disregard for,
20 causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional
21 distress and (3) actual or proximate causation.'"  Posadas v. City of Reno, 851 P.2d 438,

---

[3]  LVMPD also argues Williams has not stated a claim for intentional infliction of emotional distress because "[i]n Nevada, cases of intentional infliction of emotional distress that are not secondary to physical injuries, at a minimum, require evidence of a 'physical impact' or of 'serious emotional distress causing physical injury or illness . . . .'"  (Mot. to Dismiss at 14 [quoting Barmettler v. Reno Air Inc., 956 P.2d 1382, 1387 (Nev. 1998)].)  However, the language in Barmettler to which LVMPD refers concerned a claim for negligent infliction of emotional distress, not intentional infliction of emotional distress.  Barmettler, 956 P.2d at 1387.

444 (Nev. 1993) (quoting Star v. Rabello, 625 P.2d 90, 91-92 (Nev. 1981)).

Williams sufficiently has stated a claim for intentional infliction of emotional distress. In the Complaint, Williams asserts LVMPD's conduct towards Williams was "so extreme and outrageous that they clearly intended the emotional and stressful responses which have been seen from Williams as a result of said conduct . . . . " (Compl. ¶ 62.) Accordingly, Williams has given LVMPD fair notice of his claim for intentional infliction of emotional distress and the grounds upon which his claim rests. The Court therefore will deny LVMPD's motion to dismiss as to Williams's claim for intentional infliction of emotional distress.

### E. Negligent Infliction of Emotional Distress

LVMPD argues Williams cannot assert a claim for negligent infliction of emotional distress because "[i]n order to support a claim for negligent infliction of emotional distress Lt. Williams must have been a bystander to [sic] injured party. Because he alleges he himself is the injured in this instance this claim must be dismissed." (Mot. to Dismiss at 15.) However, the Nevada Supreme Court has held that because "a bystander can recover for the negligent infliction of emotional distress, it is only logical that the direct victim be permitted the same recovery." Shoen v. Amerco, Inc., 896 P.2d 469, 477 (Nev. 1995). Because Nevada allows the direct victim to assert a claim for negligent infliction of emotional distress, the Court will not dismiss Williams's claim for negligent infliction of emotional distress on that basis.

///
///
///
///
///
///

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Las Vegas Metropolitan Police Department's Motion to Dismiss (Doc. #6) is hereby DENIED.

DATED:   July 21, 2006

_____
PHILIP M. PRO
Chief United States District Judge